**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 21-238 |
| | : | |
| ASA JACKSON | : | |

# MEMORANDUM
## with Findings of Facts and Conclusions of Law

**KEARNEY, J.**                                                    **December 22, 2021**

The grand jury charges Asa Jackson with being a felon in possession of a firearm during and after a May 10, 2020 encounter with a woman in a corner store, the store owner, and the woman's sister shortly thereafter. He committed this charged conduct while on supervision in the Pennsylvania criminal justice system. Three witnesses saw Mr. Jackson's possession of the firearm during the encounters. He has an extensive criminal history in state court, including convictions for possession with intent to distribute narcotics and arrests ranging from assault to escape and charges for failure to appear at a hearing. He originally stipulated to pretrial detention when he pleaded not guilty. Trial is scheduled for March 21, 2022. He now asks us to release him pending trial where he plans to reside with a friend and her three children and adhere to bail conditions, including electronic monitoring to allow him to work as a security guard. The United States opposes release arguing there are no conditions of release which could reasonably assure Mr. Jackson's appearance at trial given his earlier failures to honor court orders including terms of supervision and his release will not endanger the safety of at least the witnesses and his community given his ability to obtain firearms and threats to the persons who may testify against him. After oral argument and review of the records, we deny his motion for release upon finding:

1.      Our grand jury charged Asa Jackson on June 17, 2021 with knowingly possessing a firearm on May 10, 2020 while knowing he had been earlier convicted in Pennsylvania of a crime punishable by imprisonment for a term in excess of one year.

2.      Judge Rice granted the United States' motion for pretrial detention.

3.      Mr. Jackson later stipulated to pretrial detention before Judge Sitarski when entering a not guilty plea.

4.      We twice granted the Defendant's motion to continue the trial now scheduled to begin on March 21, 2022.

5.      Mr. Jackson now moves to revoke his stipulated pretrial detention order with release on conditions of bail.

6.      He proposes release secured by a bond and conditioned he return working as a security officer for CSC Event Staffing and live with his friend Jessica Chambliss and her three children in Philadelphia. He agrees to any other bail condition including electronic monitoring.

***Background before Mr. Jackson's charged May 10, 2020 conduct.***

7.      Mr. Jackson is a forty-year-old man with ties to the Philadelphia community where both his sisters reside.

8.      Mr. Jackson never married and has one adopted child.

9.      Mr. Jackson has no assets and generates income  from work delivering grocery and supplies.

10.     He abused substances beginning at age sixteen including alcohol and marijuana. He also abused opiates for a period.

11.     Mr. Jackson has several contacts with Pennsylvania law enforcement from age fourteen including:

a.   April 10, 1996 arrest for simple and aggravated assault;

b.   May 4, 1996 arrest for simple and aggravated assault;

c.   October 31, 1996 arrest for theft by unlawful taking and receiving stolen property;

d.   June 13, 1998 arrest for theft by unlawful taking and receiving stolen property;

e.   August 13, 1998 arrest for violation of the Controlled Substances Act;

f.   February 1, 2000 conviction for possession with intent to manufacture or deliver a controlled substance and criminal conspiracy resulting in a sentence of one year of confinement and one year of probation;

g.   January 4, 2002 conviction of possession with intent to manufacture or deliver a controlled substance;

h.   April 28, 2003 arrest for violation of the Controlled Substances Act;

i.   November 23, 2003 arrest for possessing a firearm without a license;

j.   March 16, 2004 arrest for escape;

k.   March 1, 2005 arrest for escape;

l.   December 21, 2005 arrest for violation of the Controlled Substances Act;

m.   June 13, 2007 conviction for possession with intent to manufacture or deliver a controlled substance resulting in a sentence of six months to six years confinement;

n.   August 19, 2010 conviction for possession with intent to manufacture or deliver a controlled substance resulting in a guilty plea and a sentence of one to two years confinement;

o.   May 3, 2012 plead guilty to disorderly conduct;

p.   May 16, 2014 arrest for escape;

q.   April 23, 2014 pleaded guilty to possession of marijuana with thirty days of confinement;

r.   June 7, 2014 conviction for possession with intent to manufacture or deliver a controlled substance resulting in three to twenty-three months of confinement followed by one year probation;

3

s.   June 13, 2018 probation revoked and re-sentenced to three years' probation;

t.   January 28, 2019 probation revoked and re-sentenced to three years' probation;

u.   August 17, 2014 arrest for violation of Controlled Substances Act;

v.   September 29, 2016 conviction for possession with intent to manufacture or deliver a controlled substance resulting in three years' probation;

w.   January 10, 2019 default for required appearance before the SEPTA Police Department; and

x.   May 11, 2020 arrest for possession of a firearm without a license now dismissed with the filing of this case.

### *Mr. Jackson's charged May 10, 2020 conduct.*

12.   Mr. Jackson continued to serve a term of parole under state law on May 10, 2020 prohibiting him from, among other things, possessing a firearm.

13.   Three witnesses observed Mr. Jackson with a firearm on May 10, 2020.

14.   Mr. Jackson approached the first witness inside a corner store.

15.   He smashed her in the face with a carton of eggs and demanded she give him money he believed  the witness owed him.

16.   When Mr. Jackson began to assault the witness,  the store owner came to her aid. The store owner removed Mr. Jackson from the store and locked the door with the witness inside.

17.   The allegedly assaulted woman saw Mr. Jackson waive his gun outside the store as he demanded the store owner open the door.

18.   The woman and store owner called the police.

19.   The store owner is the second witness to Mr. Jackson's possession of the firearm.

20.     After leaving the corner store, Mr. Jackson  went to the allegedly assaulted woman's nearby home where he met her sister and threatened to enter the home looking for money owed to him. He showed his firearm to the sister.

21.     This sister is the third witness and is expected to testify she saw Mr. Jackson with a firearm.

22.     The police responded and observed Mr. Jackson fit the given description.

23.     A responding officer is expected to testify Mr. Jackson went between two parked cars while turning his back to the patrol car and reached near his waist area after seeing the officer's patrol car. The officer heard the sound of a metal object hitting the street through his open window.

24.     The officer parked his car and approached Mr. Jackson while activating his body worn camera.

25.     The officer detained Mr. Jackson and placed him in the back of the patrol car while he searched the area between the two cars where he saw Mr. Jackson walking.

26.     The officer's body worn camera confirms (a) he observed a Smith and Wesson revolver on the street between the two parked cars; and (b) the officer's interview the first witness and her sister.

27.     Both witnesses' recorded statements confirm they saw Mr. Jackson possess the firearm recovered by the officer.

28.     At oral argument, Mr. Jackson argued we should release him from pre-trial detention because one of the three witnesses is now incarcerated awaiting trial in state court and this changes his trial strategy. While it may raise questions of her trial credibility, this argument ignores the strength of the United States' case based on two other witnesses and the undisputed fact the now-incarcerated witness gave recorded statements to the officers and to the grand jury.

***The United States met its burdens to detain Mr. Jackson pending trial.***

29.     As charged by the grand jury, there is probable cause to believe Mr. Jackson knowingly possessed a firearm on May 10, 2020 while knowing he had been earlier convicted in Pennsylvania of a crime punishable by imprisonment for a term in excess of one year.

30.     He faces a mandatory minimum sentence of 180 months if convicted of this charged crime.

31.     He has incentive to flee given the potential sentence and the United States' evidence.

32.     The nature and circumstances of the charged offense prove Mr. Jackson poses a flight risk by a preponderance of the evidence and a danger to the community by clear and convincing evidence.

33.     The weight of the evidence against Mr. Jackson is strong and shows he knowingly possessed a firearm on May 10, 2020 while knowing he had been earlier convicted in Pennsylvania of a crime punishable by imprisonment for a term in excess of one year.

34.     Mr. Jackson's criminal history and characteristics confirm he poses a flight risk by a preponderance of the evidence and he poses a danger to the community by clear and convincing evidence.

35.     The nature and seriousness of the danger to the community posed by Mr. Jackson confirms he poses a flight risk by a preponderance of the evidence and he poses a danger to the community by clear and convincing evidence.

36.     The United States proved by a preponderance of the evidence no condition or combination of conditions will reasonably assure Mr. Jackson's appearance at trial.

37.     The United States proved by clear and convincing evidence no condition or combination of conditions will reasonably assure the safety of the community if Mr. Jackson is released.