IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | **NO. 21-238** |
| | : | |
| **ASA JACKSON** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                                                                                    **May 23, 2022**

      Our jury found a Philadelphia man possessed a firearm manufactured in Massachusetts after an encounter with two sisters at and around a neighborhood bodega. The jury found the man knew he could not possess a firearm as a person formerly convicted of a felony in state court. The United States adduced overwhelming evidence of his possession including testimony from the sisters, the arresting officer, and expert witnesses confirming the almost certain likelihood the firearm travelling in interstate commerce contained the man's DNA immediately after the police found the firearm a few feet from the man. The man seeks a new trial or judgment of acquittal, arguing insufficient evidence supported his conviction, we admitted impermissible character evidence, and we should have suppressed the sisters' in-court identifications. We deny his motion. The jury heard overwhelming evidence of the man's guilt, we did not admit improper character evidence, and the witnesses rendered reliable in-court identifications.

I.  **Evidence adduced at trial**

Our grand jury charged Asa Jackson with one count of being a felon possessing a firearm.[1] A jury found Mr. Jackson guilty of being a felon in possession of a firearm after trial.[2]

The United States adduced substantial evidence for the jury's deliberations. Theresa Coleman testified Mr. Jackson followed her to a bodega near her home in the Kensington section of Philadelphia on May 10, 2020. Ms. Coleman knew Mr. Jackson because he had unsuccessfully attempted to court her sister and roommate, Nyeema Peterson. Inside the bodega, Mr. Jackson smashed eggs in Ms. Coleman's face. Mr. Jackson yelled Ms. Coleman owed him money. Ms. Coleman and Mr. Jackson tussled. Mr. Jackson left the bodega. Ms. Coleman called her sister Ms. Peterson for help.

Ms. Peterson testified she began to leave her home to meet Ms. Coleman at the bodega. When she opened her door, Mr. Jackson stood there pointing a firearm at her. Ms. Peterson recognized Mr. Jackson from his attempts to court her. She knew him as "Asic" and had communicated with him via text message. Ms. Peterson escaped from Mr. Jackson and walked to the bodega to meet Ms. Coleman.

Ms. Peterson arrived at the bodega and saw Ms. Coleman with egg yolk on her face. Mr. Jackson suddenly appeared at the bodega brandishing a firearm. The store owner locked Mr. Jackson out of the bodega. Mr. Jackson remained outside, waving his firearm, and threatening the women. Ms. Coleman and the store owner called the police. They reported Mr. Jackson's actions and disclosed Mr. Jackson wore a red-and-black jacket.

Philadelphia Police responded to the 9-1-1 call concerning a man with a firearm in a red-and-black jacket moments later. Officer Baldt drove to the area and saw Mr. Jackson in a red-and-black jacket about two blocks from the bodega. Officer Baldt heard a metal object hitting the ground. Officer Baldt exited his car and arrested Mr. Jackson because he matched the description

the callers provided. Officer Baldt recovered a discarded gun about twenty feet from where he arrested Mr. Jackson. Ms. Peterson and Ms. Coleman appeared at the scene of Mr. Jackson's arrest. Officer Baldt questioned the women and they confirmed Mr. Jackson possessed a gun. The jury watched video footage from Officer Baldt's body camera showing Mr. Jackson's arrest, Officer Baldt's recovery of the firearm, and Officer Baldt's conversations with Ms. Peterson and Ms. Coleman.

DNA analyst Lissette Vega testified as a qualified expert in DNA analysis. Ms. Vega tested DNA recovered on the firearm found near Mr. Jackson. She testified the recovered DNA originated from at least three persons. She concluded it is 1.837 quadrillion times more likely the DNA originated from Mr. Jackson and two random unrelated persons than if it originated from three random Caucasian persons; 17.84 trillion times more likely the DNA originated from Mr. Jackson and two random unrelated persons than if it originated from three random Black persons; and 2.497 quadrillion times more likely the DNA originated from Mr. Jackson and two random unrelated persons than if it originated from three random Hispanic persons.[3]

Alcohol Tobacco and Firearms special agent Kyle Raguz opined, as an expert witness in the interstate nexus of firearms, Officer Baldt recovered a firearm manufactured in Massachusetts.

The United States and Mr. Jackson stipulated to certain facts, which we read to the jury: The United States's exhibits—including the firearm Officer Baldt recovered—went through the proper chain of custody; Mr. Jackson knew he had been convicted of a felony before May 10, 2020; and Officer Baldt recovered a "firearm" as defined by Congress in 18 U.S.C. § 921(a)(3).[4]

## II.   Analysis

Mr. Jackson moves for acquittal or a new trial under Federal Rules of Criminal Procedure 29 and 33.[5] He presents three grounds: (1) the United States adduced insufficient evidence from which a jury could find Mr. Jackson guilty, (2) we admitted impermissible character evidence, and

(3) we should have suppressed Ms. Coleman and Ms. Peterson's in-court identifications of Mr. Jackson based on unduly suggestive police procedures.

We disagree. First, the jury heard overwhelming evidence of Mr. Jackson's guilt. Second, we did not admit impermissible character evidence because the evidence Mr. Jackson challenges is intrinsic and completes the story of the crime. Third, Ms. Coleman's and Ms. Peterson's in-court identifications of Mr. Jackson do not violate his due process rights.

### A. The jury heard overwhelming evidence of Mr. Jackson's guilt.

Mr. Jackson argues the United States failed to adduce sufficient evidence allowing the jury to find him guilty beyond a reasonable doubt. We disagree.

The grand jury charged Mr. Jackson with being a felon possessing a firearm. To prove this charge, the United States needed to adduce evidence of four elements beyond a reasonable doubt: (1) Mr. Jackson was a felon, (2) he knew he was a felon, (3) he knowingly possessed a firearm, and (4) he possessed the firearm in or affecting interstate commerce.[6]

The jury heard overwhelming evidence of these elements. Mr. Jackson stipulated to the first two elements, leaving only his possession and whether his possession affected interstate commerce at issue.

The jury heard overwhelming evidence Mr. Jackson possessed a firearm. "To 'possess' means to have something within a person's control."[7] Four witnesses testified Mr. Jackson possessed a firearm. Ms. Peterson testified Mr. Jackson pointed a firearm at her in front of her home. Ms. Peterson and Ms. Coleman testified they saw Mr. Jackson waving the firearm outside of the bodega while threatening them. They provided a description of Mr. Jackson to police, including his red-and-black shirt. Officer Baldt testified he saw Mr. Jackson wearing a red-and-black shirt two blocks from the bodega and heard a metal object hit the ground near him. Officer Baldt recovered a firearm only feet from where he arrested Mr. Jackson. The jurors watched a

4

video of Officer Baldt's confrontation with Mr. Jackson, confirming his testimony. Ms. Vega testified the DNA recovered on the firearm confirmed Mr. Jackson possessed it. Ms. Vega testified to the astronomically small probability the DNA mixture on the firearm originated from persons not including Mr. Jackson. The parties stipulated the weapon constituted a "firearm" for purposes of the charged offense.

The jury also heard sufficient evidence Mr. Jackson possessed the firearm in or affecting interstate commerce. The firearm affected interstate commerce if it "crossed a state line."[8] Special Agent Raguz, an expert on interstate nexus, testified the firearm was manufactured in Massachusetts. Officer Baldt recovered the firearm in Pennsylvania, allowing the jury to infer it crossed a state line. Mr. Jackson cites no reason the jury should have disregarded Special Agent Raguz's testimony. The jury permissibly concluded the firearm affected interstate commerce.

Mr. Jackson argues the United States failed to adduce evidence of guilt beyond a reasonable doubt by citing trifling inconsistencies in the testimony. For example, Mr. Jackson cites Ms. Coleman testifying she saw a black firearm but Ms. Peterson testifying she saw a gray firearm; Ms. Coleman testifying the assailant wore a black-and-grey jacket, not a red-and-black jacket; and Ms. Coleman and Ms. Peterson testifying Mr. Jackson appeared drunk or high despite Officer Baldt testifying Mr. Jackson did not appear drunk or high. These minor inconsistencies are irrelevant to our analysis under Rule 29, which does not allow us to consider witness credibility. And they do not warrant a new trial under Rule 33 because they do not upset the overwhelming evidence Mr. Jackson possessed a firearm.

Mr. Jackson also disregards Officer Baldt's testimony as "circumstantial" because Officer Baldt never saw Mr. Jackson hold the firearm. But "the law makes no distinction between" the weight afforded circumstantial evidence and direct evidence.[9] Officer Baldt seeing Mr. Jackson

5

two blocks from the bodega, matching witness' descriptions; hearing a metal object hit the ground moments before arresting Mr. Jackson; and recovering a firearm mere feet from Mr. Jackson provides powerful circumstantial evidence Mr. Jackson possessed the firearm. Mr. Jackson's sufficiency-of-the-evidence arguments lack merit.

### B. We did not admit impermissible character evidence.

Mr. Jackson argues we erred by admitting impermissible character evidence (or "Rule 404(b) evidence"). Mr. Jackson challenges our admission of testimony showing Mr. Jackson smashed eggs in Ms. Coleman's face, Mr. Jackson pointed a firearm at Ms. Peterson, and Mr. Jackson waved his firearm outside the bodega while threatening Ms. Coleman and Ms. Peterson.[10] Mr. Jackson argues Federal Rule of Evidence 404(b) prohibits this evidence of his "other wrongs." We disagree.

Rule 404(b) prohibits "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[11] For example, Rule 404(b) precludes evidence offered to prove "the defendant is prone to commit crimes or is otherwise a bad person."[12] But character evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[13] "To be admissible under Rule 404(b), evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it."[14]

We did not impermissibly admit character evidence. Evidence Mr. Jackson pointed a firearm at Ms. Peterson and brandished a firearm at the bodega is not character evidence; it is intrinsic evidence of the crime charged which does not require a Rule 404(b) analysis. And

6

evidence of Mr. Jackson assaulting Ms. Coleman in the bodega is admissible because it completes the story of the crime charged.

### 1. Evidence Mr. Jackson pointed a firearm at Ms. Peterson and brandished the firearm at the bodega is intrinsic.

Evidence is not character evidence if it is "intrinsic" to the charged offense.[15] Intrinsic evidence "need not be" analyzed under Rule 404(b) because "there is no 'other' wrongful conduct at issue; the evidence is admissible as part and parcel of the charged offense."[16] Evidence is intrinsic if it (1) "directly proves the charged offense" or (2) constitutes "uncharged acts performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime."[17]

Mr. Jackson pointing a firearm at Ms. Peterson and waving the firearm outside the bodega constitutes admissible intrinsic evidence which does not require a Rule 404(b) analysis. Evidence Mr. Jackson pointed a firearm at Ms. Peterson and waved the firearm outside the bodega is intrinsic because it directly proves the charged offense of being a felon in possession of a firearm. This evidence shows Mr. Jackson possessed a firearm by showing he literally held a firearm. The evidence is not character evidence and need not be analyzed under Rule 404(b).

### 2. Evidence Mr. Jackson smashed eggs in Ms. Coleman's face is admissible.

The evidence Mr. Jackson smashed eggs in Ms. Coleman's face at the bodega is not intrinsic because it does not directly prove Mr. Jackson possessed the firearm. The evidence necessitates the four-step Rule 404(b) analysis. We find the evidence of egg-smashing: (1) has the proper evidentiary purpose of completing the story of the crime; (2) is relevant to the submitted permissible purpose; (3) satisfies Rule 403; and (4) required a limiting instruction, which we gave to the jury.

### a. The evidence has the proper evidentiary purpose of completing the story of the crime.

At step one, we must consider whether the evidence has a proper evidentiary purpose. A "proper evidentiary purpose" is "one that is 'probative of a material issue other than character.'"[18] Because "all Rule 404(b) evidence is at least somewhat prejudicial to the party against whom it is admitted and will invite the jury to make inferences about his or her character," we should not exclude Rule 404(b) evidence "simply if it invites character inferences."[19] We should exclude the evidence only if it is "used to prove a person's character *and* that invites the inference that the person acted in conformity with that character, and was therefore more likely to have committed the charged crime."[20]

The egg-smashing evidence is admissible for the proper purpose of completing the story of the charged crime. Our Court of Appeals recognizes Rule 404(b) evidence which simply "complete[s] the story of the crime charged" is offered for a proper purpose.[21] Such evidence "avoid[s] confusing the jury."[22] The egg-smashing is the event which set in motion Mr. Jackson's charged conduct on May 10, 2020. It explains why Ms. Coleman summoned Ms. Peterson to the bodega, why Ms. Peterson had occasion to open her door and see Mr. Jackson pointing a gun at her, why Mr. Jackson followed her to the bodega, why the store owner locked Mr. Jackson out of the store, and why those in the store called the police. This evidence in turn proves why Officer Baldt arrived, why Officer Baldt arrested Mr. Jackson, why Officer Baldt searched for a firearm, and why Officer Baldt questioned Ms. Coleman and Ms. Peterson. The egg-smashing immediately preceded evidence Mr. Jackson possessed a firearm. The jury would be extremely confused without hearing about the egg-smashing event at the bodega moments before Mr. Jackson waved the gun outside the bodega window and the call to police.

### b. The evidence is relevant for non-propensity inferences.

At step two, we must consider whether the evidence is relevant for its non-propensity purpose.[23] Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."[24] For evidence offered under Rule 404(b) to be relevant, the proffering party must "establish a chain of inferences no link of which is based on a propensity inference."[25]

The evidence of egg-smashing is relevant for its non-propensity purpose. The United States offered the evidence so the jury could understand what triggered Mr. Jackson's actions on May 10, 2020. The United States did not offer the evidence so the jury could infer, "Mr. Jackson smashed eggs in Ms. Coleman's face; therefore, he is a violent person with a propensity to possess a firearm." It instead proffered the evidence for the "specific, non-propensity purpose" of "allowing the jury to hear the full story of the crime."[26] The evidence of egg-smashing did bear on Mr. Jackson's character, but all Rule 404(b) evidence bears on character. The evidence is admissible because it did not support a character inference.

### c. The evidence satisfies Rule 403.

At step three, we consider whether the evidence satisfies Rule 403. We may exclude evidence under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[27] Rule 403 is concerned with "*unfair* prejudice, not just prejudice."[28] The evidence is unfairly prejudicial if it "clouds impartial scrutiny and reasoned evaluation of the facts."[29]

The evidence satisfies Rule 403. It has high probative value because it proved the story of the crime charged. The evidence was instrumental to the United States' case. The evidence did not "unfairly" prejudice Mr. Jackson because it constituted evidence of his own acts during the crime

9

at issue. The evidence did not cloud the jury's impartial scrutiny of whether Mr. Jackson possessed a firearm; we instructed the jury on how it could consider the evidence. The probative value strongly outweighs whatever unfair prejudice the evidence might contain.

### d. We issued a limiting instruction.

At step four, we must issue a limiting instruction at the parties' request. We did so. We issued a fulsome limiting instruction to ensure the jury would not consider the evidence for an improper purpose. We properly admitted the evidence.[30]

### C. Ms. Coleman and Ms. Peterson's in-court identifications of Mr. Jackson do not violate his due process rights.

Mr. Jackson argues Ms. Coleman and Ms. Peterson's in-court identifications of him as the man who possessed a firearm on May 10, 2020 violated his due process rights because suggestive police procedures tainted their identifications.[31] He argues the police used a "show-up" procedure which caused Ms. Coleman and Ms. Peterson to identify Mr. Jackson as the perpetrator. We disagree.

Our framers of the Fifth Amendment prohibited the admission of eyewitness identifications which are "so unfairly prejudicial to the defendant that admitting the evidence would violate the defendant's due process rights."[32] "[T]he admission of identification evidence offends due process only if the evidence meets two criteria."[33] "First, the evidence must be 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'"[34] "Second, if the evidence is impermissibly suggestive, it must also be unreliable."[35]

Mr. Jackson shows neither element. We explained why Mr. Jackson shows neither element in our March 22, 2022 Memorandum.[36] Mr. Jackson offers no basis for us to revisit our March 22

findings. Our detailed findings on March 22, 2022 affirm Mr. Jackson does not show a due process violation.

## III. Conclusion

We deny Mr. Jackson's motion for acquittal or new trial.

---

[1] ECF Doc. No. 1.

[2] ECF Doc. No. 81.

[3] *See* Ex. 10 at 1.

[4] *See* Exs. 16–18.

[5] Federal Rule of Criminal Procedure 29 requires us to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "We interpret the evidence in the light most favorable to the government as the verdict winner and 'do not weigh evidence or determine the credibility of witnesses.'" *United States v. Zayas*, 32 F.4th 211, 216 (3d Cir. 2022) (quoting *United States v. Gambone*, 314 F.3d 163, 169–70 (3d Cir. 2003)). We must sustain the jury's verdict "if a rational trier of fact could have found the defendant guilty beyond a reasonable doubt and if the verdict is supported by substantial evidence." *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006). We "must simply determine whether 'the conclusion chosen by the factfinders was permissible.'" *United States v. McGill*, 964 F.2d 222, 230 (3d Cir. 1992) (quoting *United States v. Ashfield*, 735 F.2d 101, 106 (3d Cir. 1984)).

Federal Rule of Criminal Procedure 33 allows us to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). We may grant a Rule 33 motion if the jury rendered a verdict "contrary to the weight of the evidence." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). Unlike a Rule 29 motion, we do "not view the evidence favorably to the Government, but instead exercise[] [our] own judgment in assessing the Government's case." *Id.* We may also grant a Rule 33 motion if evidentiary errors "so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993) (quoting *United States v. Hill*, 976 F.2d 132, 145 (3d Cir. 1992)). Rule 33 motions "are not favored and should be 'granted sparingly and only in exceptional cases.'" *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008) (quoting *Gov't of V.I. v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)). We may grant a Rule 33 motion "only if" we identify "a serious danger . . . an innocent person has been convicted." *Id.* (quoting *Johnson*, 302 F.3d at 150).

[6] 18 U.S.C. § 922(g)(1); 18 U.S.C. § 924(e); *see also Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019); 3d. Cir. Model Crim. Jury Instruction 6.18.922G.

[7] *United States v. Fields*, 507 F. App'x 144, 148 (3d Cir. 2012) (internal quotations added).

[8] *See* 3d Cir. Model Crim. Jury Instructions § 6.18.922G-5 (citing *United States v. Singletary*, 268 F.3d 196, 200 (3d Cir. 2001)).

[9] 3d Cir. Model Crim. Jury Instructions § 3.03.

[10] *See* ECF Doc. No. 86 at 4 (referencing ECF Doc. No. 24, Mr. Jackson's original motion in limine to exclude "404(b) evidence").

[11] Fed. R. Evid. 404(b)(1).

[12] *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010) (quoting *United States v. Taylor*, 522 F.3d 731, 735–36 (7th Cir. 2008)).

[13] Fed. R. Evid. 404(b)(2).

[14] *Green*, 617 F.3d at 249.

[15] *Id.* at 245 (internal quotations omitted).

[16] *Id.*

[17] *Id.* at 249 (internal quotations omitted).

[18] *Id.* at 250.

[19] *United States v. Smith*, 725 F.3d 340, 345 (3d Cir. 2013).

[20] *Id.* (emphasis added).

[21] *United States v. Steiner*, 847 F.3d 103, 112 (3d Cir. 2017) (describing *Green*, 617 F.3d at 250).

[22] *Green*, 617 F.3d at 249 (quoting *Taylor*, 522 F.3d at 736).

[23] *Id.*

[24] Fed. R. Evid. 401.

[25] *Smith*, 725 F.3d at 345.

[26] *Green*, 617 F.3d at 249.

[27] Fed. R. Evid. 403.

[28] *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009) (emphasis in original).

[29] *Id.* (quoting *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002)).

---

[30] We previously denied Mr. Jackson's motion *in limine* to exclude the Rule 404(b) evidence. Mr. Jackson previously moved to exclude evidence of "assault(s) and threat(s)," but specified only the egg-smashing incident. *See* ECF Doc. No. 24 at 3. As today, we found the challenged evidence admissible because it completed the story of the crime, but we found it not intrinsic. *See* ECF Doc. No. 27. We had no occasion to address evidence Mr. Jackson waved a gun outside the bodega and pointed a gun at Ms. Peterson because we did not understand Mr. Jackson to be challenging such evidence. Because trial has ended, we now understand Mr. Jackson's is challenging **all** "assault(s) and threat(s)" in evidence. *Id.* at 2. This includes Mr. Jackson pointing a firearm at Ms. Peterson and his gun-waving. This conduct is intrinsic evidence because it directly proves Mr. Jackson possessed a firearm.

[31] ECF Doc. No. 86 at 4.

[32] *United States v. Hall*, 28 F.4th 445, 453 (3d Cir. 2022).

[33] *Id.*

[34] *Id.* at 453–54 (emphasis removed) (quoting *Neil v. Biggers*, 409 U.S. 188, 196–97 (1972)).

[35] *Id.* at 454 (citing *Biggers*, 409 U.S. at 198–200).

[36] ECF Doc. No. 82; *United States v. Jackson*, No. 21-238, 2022 WL 866683, at *2–4 (E.D. Pa. Mar. 22, 2022).